IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

THERESA CATHERYNNE PRYOR-KENDRICK                                    PETITIONER
ADC #708204

V.                                      NO. 5:08cv00105 JWC

LARRY NORRIS, Director,                                              RESPONDENT
Arkansas Department of Correction

<u>MEMORANDUM OPINION AND ORDER</u>

Theresa Catherynne Pryor-Kendrick, an Arkansas Department of Correction (ADC) inmate, brings this petition for writ of habeas corpus (doc. 3). Respondent has filed a motion to dismiss (doc. 6), to which Petitioner replied (doc. 11, 12). For the reasons that follow, the petition must be **dismissed**.[1]

I.

Petitioner is in ADC custody pursuant to a ten-year sentence for violating probation imposed for hot check violations. She does not attack her underlying criminal conviction or sentence; instead, she challenges sixteen prison disciplinary decisions from January to November 2007. In her petition (doc. 3, at 8-14), she contends that ADC officials used outdated forms for the major disciplinary reports at issue in violation of ADC policy, and that all her disciplinary appeals have been "based on false information." She contends this violates the First, Fourth, Fifth, Eighth and Fourteenth Amendments, and constitutes "retaliation and revenge" (doc. 3, at 1). As relief, she seeks immediate release from the ADC, expungement of her record, and monetary damages. In response to Respondent's

---

[1]The parties have consented to the jurisdiction of the Magistrate Judge (doc. 13).

motion to dismiss, Petitioner emphasizes that her petition is "strictly on the sixteen disciplinaries [she] received for 2007," and she appears to assert that they were all "false filed" disciplinary reports that were based on lies (doc. 11, at 9, 10, 12, 13, 16). She also seeks restoration of any lost good-time and asks that she be allowed to go before the Parole Board as a Class IV inmate (*id.* at 13-14). Although she presents allegations regarding other disciplinaries, her criminal conviction and sentence, and general harassment, the Court has limited its consideration to the 2007 disciplinaries as clarified by Petitioner.[2]

Respondent argues that this petition should be dismissed for three reasons. First, he contends that, because Petitioner lost no good-time credits as to all but one of the disciplinary decisions, her claims regarding those decisions are simply challenges to the conditions of her confinement, cognizable only in a 42 U.S.C. § 1983 civil rights action. Respondent further argues that Petitioner's claims do not demonstrate a constitutional violation. Finally, Respondent asserts that Petitioner has failed to show that she has exhausted her state-court remedies concerning the enumerated disciplinaries.

As an initial matter, Petitioner contends that this petition is properly brought pursuant to 28 U.S.C. § 2241, rather than 28 U.S.C. § 2254 (doc, 3, at 1; doc. 12, at 1-3). Where a habeas petitioner is in custody pursuant to a state-court judgment (as Petitioner is), she

---

[2]The Magistrate Judge also received several letters from Petitioner, addressing matters irrelevant to her current habeas claims, *i.e.,* a habeas action challenging her criminal conviction in the Western District of Arkansas, two detainers, and a list of ADC disciplinary reports against her that have been dismissed or reversed. The letters were placed in the correspondence section of her file without docketing. If Petitioner wants her submissions to be docketed, they should be sent to the Clerk of the Court in a proper pleading referencing the appropriate case number, rather than in a personal letter to the judge.

"can only obtain habeas relief through § 2254, no matter how [her] pleadings are styled." *Crouch v. Norris*, 251 F.3d 720, 722-23 (8th Cir. 2001). The petition has, therefore, been construed as being brought pursuant to § 2254.

## II.

"Federal law opens two main avenues to relief on complaints related to imprisonment:" a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, and a civil rights complaint pursuant to 42 U.S.C. § 1983. *Muhammad v. Close*, 540 U.S. 749, 750 (2004). The essence of habeas corpus "is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas is thus the exclusive remedy when an attack "goes directly to the constitutionality of [a prisoner's] physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration." *Id.* at 489. Where the length of an inmate's confinement is affected by the loss of good-time credits as a result of an adverse prison disciplinary decision, federal habeas is the exclusive federal forum for claims challenging those disciplinary decisions. *Portley-el v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002).

A civil rights complaint under § 1983, on the other hand, "is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Preiser*, 411 U.S. at 499. Where no good-time credits were eliminated by a prison disciplinary determination, that decision has no effect on the term of incarceration ordered by the prisoner's original criminal judgment of

conviction and a prisoner challenging the decision "raise[s] no claim on which habeas relief could have been granted on any recognized theory." *Muhammad*, 540 U.S. at 754-55.

If a habeas petitioner is not challenging the validity of his conviction or sentence or the length of his state custody, a habeas court lacks the power or subject matter jurisdiction to grant relief. *Khaimov v. Crist*, 297 F.3d 783, 785-86 (8th Cir. 2002) (finding that habeas petitioner's claims regarding prison mail and segregation were improperly brought under § 2254 because they were not alleged to have illegally extended his period of confinement); *Kruger v. Erickson*, 77 F.3d 1071, 1073-74 (8th Cir. 1996) (dismissing habeas petition for lack of subject matter jurisdiction where prisoner did not "make any colorable allegation that his underlying conviction is invalid or that he is otherwise being denied his freedom from incarceration").

Respondent submits an ADC computer-generated printout showing all of Petitioner's disciplinary violations.  (Resp't Ex. 4.)[3]  The printout shows that, in 2007, Petitioner had only one disciplinary (February 23, 2007, for assault) for which the punishment involved a loss of good-time credits.  For all others, the punishment was reduction in class status, ten to thirty days of isolation, or, in one case, restitution for destroyed state property.  Nothing in the record suggests that Petitioner's claims regarding these disciplinary decisions, even if successful, would result in any change in the duration of her term of confinement in the ADC.  This Court thus lacks subject matter jurisdiction to consider the merits of claims regarding them in a federal habeas action.

---

[3]Although both parties state there were 16 disciplinary convictions in 2007, the printout shows only 15: January 23, February 15, February 23, April 4, April 10, April 12, April 27, May 4, May 11, May 18, June 6, July 30, October 18, November 16, and November 27.  Neither party mentions or explains the discrepancy.

Additionally, the thrust of Petitioner's claims, as framed in her petition, is the use of outdated disciplinary forms in violation of ADC policy. A federal court may issue a writ of habeas corpus only for a violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §§ 2241(c), 2254(a). There is no federal constitutional interest in having state officers follow state law or prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). Therefore, Petitioner's claims in this regard do not amount to a cognizable federal habeas claim. Regardless of whether any ADC rules or regulations have been violated, this Court is limited to determining whether a federal violation has occurred.

The Fourteenth Amendment to the United States Constitution, extending the due process protections of the Fifth Amendment, provides in part that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Protected liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by state laws or policies. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Due Process Clause does not protect prisoners from every adverse change in their confinement and does not, itself, create a protected liberty interest in any particular prisoner classification, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); or in being free from transfer to "less amenable and more restrictive quarters" in the prison, *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

Liberty interests arising from state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or to actions which "inevitably affect the duration of [a prisoner's] sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Disciplinary sanctions such

as those Petitioner received – class reduction and isolation, with no accompanying loss of good time – could have no effect on the duration of her sentence, as contemplated by *Sandin*. Moreover, *Sandin* expressly recognized that disciplinary action by prison officials in response to a prisoner's misconduct "falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. Adjustments in classification and temporary segregation as a means of punishment are certainly an expected component of prison life and do not "present a dramatic departure from the basic conditions of [an inmate's] sentence." *Id.*

Under the applicable Arkansas statutes, the Board of Corrections is granted broad discretion in prescribing rules and regulations "for the maintenance of good order and discipline" in the state correctional facilities, and in classifying ADC inmates according to "good behavior, good discipline, medical condition, job responsibilities, and involvement in rehabilitative activities." Ark. Code Ann. §§ 12-29-101, 12-29-103(a), 12-29-202(a)(3) (2003 & 2007 Supp.). Inmates may be reclassified "as often as the [classification] committee deems necessary ... to maintain good discipline, order, and efficiency at the units, facilities, or centers." *Id.* § 12-29-202(c). In short, nothing in the Arkansas statutes provides a basis for finding a protected liberty interest in the classification level assigned to an inmate by prison officials. *See Sanders v. Norris*, 153 Fed. Appx. 403, 404 (8th Cir. 2005) (unpub. *per curiam*) (ADC inmate has no constitutional right to particular prison classification); *Madewell v. Roberts*, 909 F.2d 1203, 1207 (8th Cir. 1990) (ADC inmate has no right to consideration of Class I status); *Strickland v. Dyer*, 628 F. Supp. 180, 181 (E.D. Ark. 1986) (because Arkansas law does not protect a prisoner's right to any particular classification and there is no federally protected right regarding classification, ADC prisoner

could not prevail on claim that he was deprived of due process due to disciplinary penalty of two-step class reduction).

Similarly, administrative or disciplinary segregation, particularly of brief duration as imposed here, is not the kind of "atypical and significant" deprivation that creates a liberty interest under *Sandin*. *Sandin*, 515 U.S. at 485-86 (thirty days of disciplinary segregation "did not work a major disruption in [a prisoner's] environment"); *Phillips*, 320 F.3d at 847 (thirty-seven days in punitive segregation); *Portley-El*, 288 F.3d at 1065-66 (administrative and disciplinary segregation, and reclassification); *Kennedy v. Blankenship*, 100 F.3d 640, 642 n.2, 643 (8th Cir. 1996).

Because Petitioner did not have a protected liberty interest under either federal or state law in her classification level or in remaining free from segregation, she was not entitled to any due process protections in connection with disciplinary decisions imposing those sanctions, and her Fifth and Fourteenth Amendment claims regarding them fail.

Petitioner does not explain how, apart from her due process claims, she believes her First, Fourth and Eighth Amendment rights were independently violated by the disciplinary decisions. In any event, she has not demonstrated that any of the imposed disciplinary sanctions constituted unnecessary or wanton inflictions of pain, involved deprivations of "life's necessities," such as water, food or shelter, or amounted to deliberate indifference to her health or safety, so as to constitute an Eighth Amendment violation. *Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003); *Phillips*, 320 F.3d at 848. She has not shown that any Fourth Amendment rights were implicated or restricted by the disciplinary decisions. *See Amrine v. Brooks*, 522 F.3d 823, 831-32 (8th Cir. 2008) (indicating that placement of inmates in segregated confinement does not implicate Fourth Amendment).

Furthermore, restriction of prisoners' First Amendment rights may be justified by the need to provide increased incentives for better prison behavior. *Beard v. Banks*, 548 U.S. 521, 530 (2006) (restricted access to newspapers, magazines and photographs); *Overton*, 539 U.S. at 131-36 (withdrawal of visitation privileges).

Petitioner also alleges "retaliation and revenge," but does not link these broad, conclusory assertions to any particular disciplinary decisions or provide a factual basis for her accusations. Again, reversal of any disciplinary decisions on this basis would not, with one possible exception, have any effect on the duration of her sentence. Moreover, a § 1983 claim based on an allegedly retaliatory disciplinary charge fails if the charge was issued for the actual violation of a prison rule and "some evidence" supports the violation. *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). A prisoner carries a substantial burden of proving that retaliation was the sole motivating factor for the disciplinary charge. *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). Petitioner's vague allegations fall far short of meeting this burden.

As to the one disciplinary that resulted in loss of good-time credits, the Court will assume that federal habeas would be the proper remedy and that Petitioner would be entitled to due process protections.[4]  *See Superintendent v. Hill*, 472 U.S. 445, 454-56 (1985) (record must contain "some evidence" supporting prison disciplinary decision

---

[4]These issues are not clear-cut. *See McKinnon v. Norris*, 231 S.W.3d 725, 728-30 (Ark. 2006) (dismissing inmate's due process challenge to disciplinary decision that resulted in class reduction and inability to earn credit for meritorious good time; holding that Arkansas statutes do not create a liberty interest in good time because it "does not apply to reduce the length of a sentence" but instead only affects his transfer eligibility date); *Koontz v. Norris*, No. 08-75, 2008 WL 2310973 (Ark. Sup. Ct. June 5, 2008) (no due process violation regarding prison disciplinary that resulted in segregation, loss of class and good-time credits).

revoking good-time credits); *Wolff v. McDonnell*, 418 U.S. 539, 564-66, 571-72 n.19 (1974) (inmate must be given written notice of claimed violation, opportunity to call witnesses and present evidence, and a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action). Even with those assumptions, Petitioner is not entitled to federal habeas relief for two reasons. First, she has not given any underlying facts or specific allegations regarding this disciplinary decision, and she has thus failed to demonstrate that any due process protections were lacking. Second, she has submitted no proof that she has exhausted any available remedies in state court, which is a statutory prerequisite to bringing a federal habeas claim. *See* 28 U.S.C. § 2254(b)(1) (state prisoner's habeas application cannot be granted unless applicant "has exhausted the remedies available in the courts of the State; or ... there is an absence of available State corrective process; or ... circumstances exist that render such process ineffective to protect the rights of the applicant."); *id.* § 2254(c) (applicant has not exhausted his state court remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented"). Respondent represents, without dispute by Petitioner, that nonfutile state-court remedies exist for challenging ADC disciplinary decisions that result in loss of good-time credits, including: the Arkansas Administrative Procedure Act, Ark. Code Ann. §§ 25-15-201, *et. seq.*, as construed by *Clinton v. Bonds*, 816 S.W.2d 169 (Ark. 1991); a declaratory judgment action under Ark. Code Ann. §§ 16-111-101, *et seq.*; a petition for writ of mandamus under Ark. Code Ann. §§ 16-115-101, *et seq.*; and a complaint under the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-

123-105, or pursuant to 42 U.S.C. § 1983.[5]  Under these circumstances, any claims regarding this disciplinary must be dismissed.

Petitioner also contends that she should be allowed to go before the Parole Board even though she is designated as a Class IV inmate due to her disciplinary convictions. She says the relevant parole statutes require serving one-third of her sentence, which she has done, and state nothing about the attainment of Class II status before being eligible for a parole hearing (doc. 11, at 12-14).

The Due Process Clause itself does not create a protected liberty interest in the possibility of parole or release before expiration of a validly imposed sentence. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Furthermore, nothing in the Arkansas statutes governing parole creates anything more than a mere possibility of parole, and thus the statutes do not establish any right to release on parole which would invoke due process protection. *Pittman v. Gaines*, 905 F.2d 199, 201 (8th Cir. 1990); *Parker v. Corrothers*, 750 F.2d 653, 655-57 (8th Cir. 1984); *Robinson v. Mabry*, 476

---

[5] The availability of remedies in the Arkansas state courts is another uncertain area of law. *See* Ark. Code Ann. § 25-15-202(1)(B) (excluding prison disciplinaries from definition of "adjudication" for purposes of obtaining review under Arkansas Administrative Procedure Act); *McKinnon*, 231 S.W.3d at 728-32 (dismissing state petitions for habeas corpus relief and for declaratory judgment challenging prison disciplinary action; reversal of disciplinary due to irregularities and errors "is not the proper function of a declaratory judgment"); *Bayless v. Beck*, No. 04-69, 2005 WL 1411656 (Ark. Sup. Ct. June 16, 2005) (no due process cause of action under § 16-123-105 because no liberty interest in good time or segregation).  However, whether a state remedy is presently available is a question of state law as to which only the state courts may speak with final authority. *Simpson v. Camper*, 927 F.2d 392, 393 (8th Cir. 1991); *Thomas v. Wyrick*, 622 F.2d 411, 414 (8th Cir. 1980); *see* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right *under the law of the State* to raise, by an available procedure, the question presented.") (emphasis added).  If the availability of a state-court remedy is uncertain, a federal habeas court should allow the state courts the opportunity to definitively resolve the uncertainty.  *See Sloan v. Delo*, 54 F.3d 1371, 1381 (8th Cir. 1995); *Woods v. Kemna*, 13 F.3d 1244, 1245-46 (8th Cir. 1994).

F. Supp. 1022, 1023 (E.D. Ark. 1979); *see Board of Pardons v. Allen*, 482 U.S. 369, 378 n.10 (1987).  Instead, the statutes place minimal limitations on the Board's discretion and provide that the Board "may" release an individual on parole when, in its opinion, there is a reasonable probability that he can be released without detriment to the community or himself.  Ark. Code Ann. § 16-93-701(a)(1).  The statutes also clearly provide for discretion on the part of the Board in formulating "all policies, rules, and regulations regarding parole," setting conditions for parole, and in determining if or when a particular inmate will be paroled.  *E.g., id.* §§ 16-93-206(a)(1) & (4), (e)(1) & (f), 16-93-1302.  One of the factors to consider is "[i]nstitutional adjustment in general, including the nature of any disciplinary actions."  *See* http://www.arbop.org/PolicyDocuments/ABPManual_rev092408 .pdf (page 8).  The Arkansas Supreme Court has emphasized the broad discretionary authority granted to the Board under the state's parole statutes.  *Michalek v. Lockhart*, 730 S.W.2d 210, 211 (Ark. 1987); *see Dougan v. Ford*, No. 04-623, 2005 WL 2387576, *2 (Ark. Sup. Ct. Sept. 29, 2005) (unpub.) ("If the conditions [set by the Board] are too onerous, appellant could decline to accept the conditions set, and elect to serve out his sentence instead."); *see also Hamilton v. Brownlee*, 237 Fed. Appx. 114, 115 (8th Cir. 2007) (unpub.) (Arkansas parole statutes do not create protectible liberty interest in discretionary parole decisions, and prisoner did not have protectible liberty interest in having parole board follow its own hearing policy).

When a prisoner is committed to the custody of a state penal authority, such as the ADC, "he can be assured of only one thing – that he will be released from the State's custody at the end of the term of years specified by the sentencing court."  *Richmond v. Duke*, 909 F. Supp. 626, 631 (E.D. Ark. 1995).  Petitioner has no federal or state liberty

interest in the possibility of obtaining parole, and she is thus not entitled to any due process protections in connection with her parole proceedings or the particular conditions imposed by the Board in its discretion.

Respondent also argues for dismissal without prejudice due to non-exhaustion. As her petition now stands, dismissal due to lack of merit is more efficient as to Petitioner's claims concerning disciplinaries for which she lost no good-time. There is no need to make Petitioner jump through the state-court hoops to exhaust a non-viable federal habeas claim. *See* 28 U.S.C. § 2254(b)(2) (habeas application "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). However, the dismissal will be without prejudice as to the February 23, 2007, disciplinary conviction for which Petitioner lost thirty days of good-time, and for which state-court remedies may still be available.

III.

For the reasons set forth above, Respondent's motion to dismiss this 28 U.S.C. § 2254 petition for writ of habeas corpus is **granted** (doc. 6), thereby dismissing this action in its entirety. Dismissal is without prejudice as to any claims regarding Petitioner's February 23, 2007 disciplinary, and with prejudice as to all remaining claims.

IT IS SO ORDERED this 24th day of October, 2008.

_____
UNITED STATES MAGISTRATE JUDGE